Seth A. Gold (SBN 163220)
Seth.Gold@btlaw.com
Roya Rahmanpour (SBN 285076)
Roya.Rahmanpour@btlaw.com
**BARNES & THORNBURG LLP**
2029 Century Park East, Suite 300
Los Angeles, California 90067
Telephone:   (310) 284-3880
Facsimile:    (310) 284-3894

Todd G. Vare (*Admitted pro hac vice*)
Todd.Vare@btlaw.com
Paul B. Hunt (*Admitted pro hac vice*)
Paul.Hunt@btlaw.com
Jeffrey M. Barron (admitted *pro hac vice*)
Jeff.Barron@btlaw.com
E. Sahara L. Williams (admitted *pro hac vice*)
sahara.williams@btlaw.com
**BARNES & THORNBURG LLP**
11 S. Meridian Street
Indianapolis, IN 46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433

Attorneys for Plaintiff CAO Lighting, Inc.

# IN THE UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAO LIGHTING, INC., | Case No.: 2:20-cv-04926-AB-SP |
| Plaintiff, | [Assigned to the Hon. André Birotte Jr.] |
| v. | **DECLARATION OF TODD G. VARE IN SUPPORT OF PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF** |
| FEIT ELECTRIC COMPANY, INC., a California corporation | |
| Defendant. | **Hearing Date:** Sept. 1, 2021 **Hearing Time:** 10:00 a.m. **Location:** Courtroom 7B |

I, Todd G. Vare, declare as follows:

1.      I am a partner at the law firm of Barnes & Thornburg LLP and admitted to practice law before this Court *pro hac vice*. I am counsel of record for Plaintiff CAO Lighting, Inc. ("Plaintiff" or "CAO Lighting") in the above-captioned case. I submit this declaration in support of Plaintiff's reply claim construction brief. I have personal knowledge of the facts set forth in this declaration and if called as a witness, could and would testify competently thereto.

2.      Attached as **Exhibit 9** is a true and correct copy of the Reply Declaration of James R. Shealy, Ph.D., in support of Plaintiff CAO Lighting, Inc.'s Reply Claim Construction Brief.

3.      Attached as **Exhibit 10** is a true and correct copy of the Patent Trial and Appeal Board's Decision Affirming Examiner, dated August 31, 2016, in the *inter partes* reexamination proceeding on U.S. Patent No. 6,746,885, as maintained by the Patent Office.

4.      Attached as **Exhibit 11** is a true and correct copy of excerpted pages from the "Supplemented Declaration of Dr. Eric Bretschneider Regarding Claim Construction in Support of Cree, Inc.," dated December 18, 2017, as filed as Document 115 in the lawsuit captioned *Optolum, Inc. v. Cree, Inc.*, Civil Action No. 1:17-cv-00687-WO-JLW, in the United States District Court for the Middle District of North Carolina.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed August 2, 2021 in Indianapolis Indiana.

Todd G. Vare

**DECLARATION OF TODD G. VARE IN SUPPORT OF
PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF**

# EXHIBIT 9

Seth A. Gold (SBN 163220)
Seth.Gold@btlaw.com
Roya Rahmanpour (SBN 285076)
Roya.Rahmanpour@btlaw.com
**BARNES & THORNBURG LLP**
2029 Century Park East, Suite 300
Los Angeles, California 90067
Telephone:   (310) 284-3880
Facsimile:    (310) 284-3894

Todd G. Vare (*Admitted pro hac vice*)
Todd.Vare@btlaw.com
Paul B. Hunt (*Admitted pro hac vice*)
Paul.Hunt@btlaw.com
Jeff M. Barron (*Admitted pro hac vice*)
Jeff.Barron@btlaw.com
E. Sahara L. Williams (*Admitted pro hac vice*)
Sahara.Williams@btlaw.com
**BARNES & THORNBURG LLP**
11 S. Meridian Street
Indianapolis, IN 46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433

Attorneys for Plaintiff CAO Lighting, Inc.

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAO LIGHTING, INC.,<br><br>Plaintiff,<br><br>v.<br><br>FEIT ELECTRIC COMPANY, INC., a California corporation<br><br>Defendant. | Case No.: 2:20-cv-04926-AB-SP<br><br>Hon. André Birotte Jr.<br><br>**REPLY DECLARATION OF JAMES RICHARD SHEALY, Ph.D. IN SUPPORT OF CAO LIGHTING'S REPLY BRIEF ON CLAIM CONSTRUCTION** |

1.      I, James Richard Shealy, Ph.D., declare and state under the penalties of perjury as follows:

2.      I have been retained by Barnes & Thornburg LLP to prepare this report as an expert witness for CAO Lighting, Inc. ("CAO"). I have personal knowledge of the facts contained herein and, if called as a witness, I could and would testify competently thereto.

3.      I am a Professor of Electrical and Computer Engineering at Cornell University in Ithaca, New York. I incorporate my background, qualifications, and CV from my previous declaration submitted in support of Plaintiff CAO Lighting's opening claim construction brief.

4.      I expect to be called as an expert witness for CAO if this case goes to trial. I expect to testify at trial regarding the matters set forth in this report. I also understand that I may be asked to rebut testimony or opinions presented on behalf of the Defendant Feit. I further understand that I may be asked to supplement my opinions in this report should additional evidence or information be provided to me. And should additional information or evidence become available to me, I reserve the right to supplement or amend my report as appropriate or necessary.

5.      I may prepare demonstrative exhibits to help me explain or illustrate concepts discussed in this declaration.

1

6.      I am being compensated at my standard hourly rate of $600 per hour for my work performed in connection with this matter. My compensation does not depend in any way upon the outcome of this matter.

7.      I have read Feit's Opening Claim Construction Brief and Declaration of Dr. Bretschneider.

"electron" vs.  "electrode"

8.      Claim 7 the layer construct of a semiconductor chip, including an LED. Claim 7, among other things, recites "a contact layer on which an electron may be mounted for powering said [semiconductor] chip."

9.      In this context, in order to power an LED chip, an electrode (anode) is placed on a contact layer, which removes electrons creating "holes" in the valence band. Another electrode (cathode) is placed on another contact layer, which results in adding electrons that are placed in the conduction band of that contact layer.

10.      The '961 patent specification consistently refers to an "electrode" (a metal contact) being placed on a contact layer of an exemplary LED chip construct, whether a positive electrode placed on the p-type contact layer or the negative electrode placed on the n-type contact layer. *See* '961 patent, col: 4:35-36 (positive and negative electrodes are provided for powering the LED chip). It is my opinion that the term "electrode"— which is a metal contact—is typically what is "mounted" on a contact layer. Thus, consistent with the '961 patent specification, the term "electron" may be viewed as a typographical error and replaced with the term "electrode." I am aware that during

2

reexamination of the '961 patent, both the Patent Office examiner and the reexamination petitioners believed the term should "electron" should read instead "electrode." For example, the examiner wrote "electron [sic.]" in reciting the language of claim 7 and finding that a prior art reference called Suigura disclosed an "electrode" mounted on a contact layer. Thus, the examiner believed that claim 7's use of "electron" was a typo and should instead read "electrode" (instead of "electron") being mounted on the contact layer.

11.    Importantly, replacing the term "electron" with "electrode" in the context of the '961 patent does not change the scope of the claims at all. As described above, an "electron" is positioned or placed in the conduction band of the n-type contact layer as a result of placing an "electrode" on that n-type contact layer. Thus, the scope of the patent claim as to the functionality of the LED chip layer structure is the same.

12.    In his declaration, Dr. Bretschneider states that using the term "electron" in claim 7 is impossible. It is my expert opinion that Dr. Bretschneider is simply wrong. As I explained in my opening Declaration in support of CAO Lighting's claim construction brief and here again, although the term "electron" in this claim is not the most common way to describe the structure, it is not impossible. When power is applied from an external circuit to the LED, electrons are mounted or placed into the n-type contact layer's conduction band. This occurs as a result of placing a negative electrode on an n-type contact layer. This is how LEDs work.

13.    The Feit Claim Construction Brief (at page 19) recites a paragraph from a report that I wrote in an earlier case in which I made the same point that I make here—that the examiner believed the term "electron" should read "electrode." As described above, the paragraph cited by Feit is *not* inconsistent with my opinions in this case; in fact, it is entirely consistent.

14.    Feit also highlights this sentence from that paragraph: "I further note that the electrode is usually used by one skilled in the art to describe the ohmic metallizations, not the contact layer." That statement is accurate, but Feit misreads it as somehow inconsistent with my opinions here. That statement is simply not relevant to whether "electron" is an impossibility in this context (it is not) or whether "electron" can be replaced with "electrode" without changing the functionality of the LED construct or the scope of the claims (there is no change; the effect is the same). Rather, in that highlighted statement, I was simply making the point that the electrode is a metal contact; it is not the contact layer. The use of an electrode placed on a contact layer describes the ohmic metallization. In other words, the contact layer only functions if a metal contact (i.e., an electrode) is placed on it—as described above.

15.    In my earlier report, I first acknowledged that the patent examiner noted that the claim should be read as "electrode," not "electron." I then stated, as I did in my earlier Declaration in this case, that using the word "mounted" in connection with "electron" was not conventional, but was in fact "technically correct." I also stated, as I have in this case, that an electrode is usually described as the conductive (often metallic)

4

layer that is in physical contact with the contact layer. The '961 patent consistently describes an "electrode" being mounted on a contact layer.

16.    Feit does not explain how my opinions regarding the use of "electron" or replacing that term with "electrode" in claim 7 are inconsistent. As explained above, they are entirely consistent. I can only assume that Dr. Bretschneider and Feit do not understand the operation or construct of LEDs or my explanation of how LEDs operate.

"reflective layers"

17.    Feit states in its brief, and Dr. Bretschneider indicates in his declaration, that adding reflective layers to LEDs defeats the goal of achieving the highest possible efficiency. This opinion and position is clearly incorrect. All modern LEDs including, those in Feit's accused products, have some reflector or reflective layer (such as a patterned sapphire substrate) to direct the light out of one side of the LED chip.

18.    The accused products also all incorporate a transparent conductor, indium tin oxide, to spread the current flow from the top side metal electrodes. A consequence of the insertion of indium tin oxide on the top surface is the reflection of light due to a discontinuity of refractive index at its interface with GaN.

19.    These observations of the Feit products are entirely consistent with my review of LEDs used in other lighting products. I have analyzed many LEDs, from various manufacturers, and each of these LEDs has reflective layers on opposite sides of the active layer. To be clear, it is my expert opinion that most if not all LEDs used in

1  general purpose LED lighting products over the last several years will include reflective

2  layers on either side of the active layer.

3

4

5          I declare that all statements made herein of my own knowledge are true and

6  that all statements made on information and belief are believed to be true; and further

7  that these statements were made with the knowledge that willful false statements and the

8

9  like so made are punishable by fine or imprisonment, or both, under Section 1001 of

10  Title 18 of the United States Code.

11

12

13          Executed on August 2, 2021

14                                                                James R. Shealy

15  20650046v3

16

17

18

19

20

21

22

23

24

25

26

27

28

**REPLY DECLARATION OF JAMES RICHARD SHEALY, Ph.D. IN SUPPORT OF PLAINTIFF CAO LIGHTING'S REPLY
BRIEF ON CLAIM CONSTRUCTION**

# EXHIBIT 10

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/002,245 | 09/13/2012 | 6746885 | P8421US00 | 4473 |

30671          7590          08/31/2016
DITTHAVONG & STEINER, P.C.
Keth Ditthavong
44 Canal Center Plaza
Suite 322
Alexandria, VA 22314

| EXAMINER |
|---|
| MENEFEE, JAMES A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/31/2016 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/000,679 | 08/06/2012 | 6746885 | P8421US00 | 4634 |

30671        7590        08/31/2016
DITTHAVONG & STEINER, P.C.
Keth Ditthavong
44 Canal Center Plaza
Suite 322
Alexandria, VA 22314

| EXAMINER |
|---|
| MENEFEE, JAMES A |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/31/2016 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————

GE LIGHTING INC. and OSRAM SYLVANIA INC.,
Requesters and Respondents

v.

EPISTAR CORPORATION,
Patent Owner and Appellant

———————————

Appeal 2016-006246
Reexamination Control Nos. 95/000,679 and 95/002,245
Patent 6,746,885 B2
Technology Center 3900

———————————

Before JOHN A. JEFFERY, DENISE M. POTHIER, and JENNIFER L.
McKEOWN, *Administrative Patent Judges*.

McKEOWN, *Administrative Patent Judge*.

Appeal 2016-006246
Control Nos. 95/000,679 and 95/002,245
Patent 6,746,885 B2

DECISION ON APPEAL

Epistar Corporation ("Patent Owner") appeals from the decision in the
Examiner's Right of Appeal Notice rejecting claims 9–13, 15–27, 30–32, 35, 36,
and 38–43[1] of U.S. Patent No. 6,746,885 ("the '885 patent").  App. Br. 3.[2]  GE
Lighting, Inc. ("GE Lighting") and OSRAM Sylvania, Inc. ("OSRAM")
(collectively, "Requesters") each respond to Patent Owner's appeal.  *See generally*
GE Resp. Br.; OS Resp. Br.

I.  STATEMENT OF CASE

Requesters requested *inter partes* reexamination of the '885 patent issued to
Densen Cao on June 8, 2004.

We have been informed that the '885 patent was the subject of a district
court proceeding, namely *Cao Group v. GE Lighting et al.*, U.S. District Court,
District of Utah, Civil Action No. 2:11-cv-00426.  *See* App. Br. 1.

We have jurisdiction under 35 U.S.C. §§ 134 and PO 315 (pre-AIA).

We AFFIRM.

II. THE '885 PATENT

The '885 patent generally relates to a method for making a semiconductor
light source for illuminating a physical space.  Abstract.   As shown below in

---

[1] Claims 1–8, 14, 28, 29, 33, 34, and 37 are canceled.  *See* App. Br. 1.
[2] In this opinion, we refer to (1) the Right of Appeal Notice mailed September 8,
2015 ("RAN"); (2) Patent Owner's Appeal Brief filed December 4, 2015 ("App.
Br."); (4) Requester GE Lighting's Respondent Brief filed January 20, 2016 ("GE
Resp. Br."); (3) Requester OSRAM's Respondent Brief filed February 8, 2016
("OS Resp. Br."); and (5) Patent Owner's Rebuttal Brief filed March 29, 2016
("Reb. Br.").

Appeal 2016-006246
Control Nos. 95/000,679 and 95/002,245
Patent 6,746,885 B2

reproduced Figure 1, a single or an array of semiconductor devices 106 capable of producing light may be mounted on a heat sink 104 including planar panels or compartments 104a–i. '885 patent, col. 3, ll. 22–31.



**Fig. 1**

Claims 9 and 15 are illustrative and read as follows:

　　9. (Original) A method for making a semiconductor light source comprising the steps of:
　　　　obtaining an enclosure, said enclosure being fabricated from a material substantially transparent to white light,
　　　　obtaining a base to which said enclosure may be mounted,
　　　　obtaining a secondary heat sink suitable for being located within said enclosure, said secondary heat sink being capable of drawing heat

3

Appeal 2016-006246
Control Nos. 95/000,679 and 95/002,245
Patent 6,746,885 B2

> from one or more semiconductors devices, said secondary heat sink having a plurality of panels on it suitable for mounting primary heat sinks thereon, said panels on said secondary heat sink being oriented to facilitate emission of light from the semiconductor light source in desired directions around the semiconductor light source,
>> obtaining a plurality of primary heat sinks,
>> obtaining a plurality of semiconductor devices,
>> mounting at least one semiconductor device on each of said primary heat sinks by use of a
>> light reflective adhesive, and
>> mounting said primary heat sinks on said secondary heat sink panels.

> 15.   (Original) A method for making a semiconductor light source comprising the steps of:
>> obtaining an enclosure,
>> obtaining a heat sink suitable for being located within said enclosure, said heat sink being capable of drawing heat from one or more semiconductors devices,
>> said heat sink having an air chamber within its interior through which air may flow in order to facilitate heat dissipation,
>> obtaining a plurality of light-emitting semiconductor devices, and
>> mounting said semiconductor devices on said heat sink.

PO App. Br. 31–32, Claims App'x.

## III. REJECTIONS

### A. Evidence Relied Upon

The Examiner relies on the following as evidence of unpatentability:

| | | |
|---|---|---|
| Mygatt | US D 38, 005 | May 8, 1906 |
| Thau | US 3,200,280 | Aug. 10, 1965 |
| Wickenden | US 4,182,025 | Jan. 8, 1980 |
| Ray | US 4,211,955 | Jul. 8, 1980 |
| Yamane | US 4,845,405 | Jul. 4, 1989 |

Appeal 2016-006246
Control Nos. 95/000,679 and 95/002,245
Patent 6,746,885 B2

| Karpinski | US 5,040,187 | Aug. 13, 1991 |
| Monto | US 5,363,009 | Nov. 8, 1994 |
| Abe | US 5,535,230 | Jul. 9, 1996 |
| Freyman | US 5,640,407 | Jun. 17, 1997 |
| Ruskouski | US 5,635,830 | Aug. 12, 1997 |
| Martin | US 5,728,090 | Mar. 17, 1998 |
| Deese | US 5,806,965 | Sep. 15, 1998 |
| Kanbar | US 5,850,126 | Dec. 15, 1998 |
| Haitz | US 5,917,202 | Jun. 29, 1999 |
| Allen | WO 99/57945 | Nov. 11, 1999 |
| Begemann | WO 00/17569 | Mar. 30, 2000 |
| Sugiura | US 6,015,979 | Jan. 18, 2000 |
| Matsubara | EP 0 977 278 | Feb. 2, 2000 |
| Alvarez | US 6,252,350 B1 | Jun. 26, 2001 |
| Waitl | US 2001/0045573 | Nov. 29, 2001 |
| Becker | US 2002/0079505 | Jun. 27, 2002 |
| Abdelhafez | US 2002/0122309 | Sep. 5, 2002 |
| Wojnarowski | US 6,635,987 | Oct. 21, 2003 |
| Koay | US 6,806,583 | Oct. 19, 2004 |

Bogner, Georg, White LED, Light-Emitting Diodes: Research, Manufacturing, and Applications III, Proceedings of SPIE, Vol. 3621, pp. 143-150, January 1999 ("Bogner").

Mukai, InGaN-based uv/blue/green/amber/red LEDs, Light-Emitting Diodes: Research, Manufacturing, and Applications III, Proceedings of SPIE, Vol. 3621, pp. 2-13, January 1999 ("Mukai").

Schweber, Bill, LEDs Move from Indication to Illumination, EDN, 2 August 2001, pp. 75-82 ("Schweber").

Declaration of Dr. Robert F. Karlicek, Jr. filed November 5, 2013 ("Karlicek Declaration").

B.    *The Adopted Rejections*

The Examiner rejects claims 39 and 40 under 35 U.S.C. § 112, second paragraph (pre-AIA) as being indefinite and rejects claims 30–32 and 35 under 35

Appeal 2016-006246
Control Nos. 95/000,679 and 95/002,245
Patent 6,746,885 B2

U.S.C. § 112, fourth paragraph (pre-AIA) as improperly dependent because they

include limitations inconsistent with those of the parent claim 23.  RAN 12–14.

The Examiner maintains at least the following proposed art rejections,[3] for

which Patent Owner appeals:

| Reference(s) | Basis | Claims | RAN |
|---|---|---|---|
| Begemann | § 102(b) | 15 and 22 | 15–18 |
| Begemann and Waitl | § 103(a) | 9–11, 15, 16, 19–22, and 43 | 18–30 |
| Begemann, Waitl, and Wojnarowski or Freyman | § 103(a) | 12 and 17 | 30–31 |
| Begemann, Waitl, and Matsubara or Sugiura | § 103(a) | 13, 18, and 22 | 32–37 |
| Begemann, Waitl, and Schweber | § 103(a) | 10, 20, and 22 | 37–40 |
| Begemann, Waitl, and any of Koay, Bogner, Alvarez (hereinafter "Combo A") | § 103(a) | 23–26, 39, and 42 | 40–48 |
| Combo A and Ray | § 103(a) | 24 | 48–49 |
| Combo A and Wojnarowski or Zhang | § 103(a) | 26 and 27 | 49–50 |
| Combo A and any of Abe, Wojnarowski, and Kanbar | § 103(a) | 30 and 31 | 50 |
| Combo A and any of Abe, Wojnarowski, and Kanbar and either Wojnarowski or Koay | § 103(a) | 32 and 35 | 50–52 |
| Combo A, Karlicek Declaration, and any of | § 103(a) | 36 | 53 |

---

[3] There are additional rejections of the pending claims not listed.  *See generally*
RAN.  As discussed below, we do not reach the merits of these rejections because
our decision with respect to the listed rejections is dispositive regarding
patentability of all appealed claims.

6

Appeal 2016-006246
Control Nos. 95/000,679 and 95/002,245
Patent 6,746,885 B2

| Allen, Becker, Wickenden, Yamane, and Ruskouski | | | |
|---|---|---|---|
| Combo A, Karlicek Declaration, and either Haitz or Mukai | § 103(a) | 38 | 53–54 |
| Combo A, Karlicek Declaration, and Karpinski | § 103(a) | 40 | 54–56 |
| Combo A, Karlicek Declaration, and any of Monto, Thau, Mygatt, or Ray | § 103(a) | 41 | 56–57 |
| Combo A, Karlicek Declaration, and any of Abdelhafez, Deese, or Martin | § 103(a) | 42 | 57 |

IV. ANALYSIS

We review the appealed rejections for error based upon the issues identified by Patent Owner, and in light of the arguments and evidence produced thereon. *Cf. Ex parte Frye*, 94 USPQ2d 1072, 1075 (BPAI 2010) (precedential) (citing *In re Oetiker*, 977 F.2d 1443, 1445 (Fed. Cir. 1992)). "Any arguments or authorities not included in the brief permitted under this section or [37 C.F.R.] §§ 41.68 and 41.71 will be refused consideration by the Board, unless good cause is shown." 37 C.F.R. § 41.67(c)(1)(vii).

*A. The Rejections based on 35 U.S.C. § 112, second and fourth paragraphs*

With respect to the rejections under 35 US.C. § 112, second and fourth paragraphs, Patent Owner does not challenge the Examiner's basis for these rejections. *See, e.g.*, App. Br. 12–13 (noting that the Examiner denied entry of an amendment and requesting the Board indicate entry of the amendment). Because

7

Appeal 2016-006246
Control Nos. 95/000,679 and 95/002,245
Patent 6,746,885 B2

the Patent Owner does not persuasively identify any error in the Examiner's
rejections, we summarily affirm these rejections.

## B. The Anticipation Rejection Based on Begemann

### Claims 15 and 22

Based on the record before us, we are not persuaded that the Examiner erred
in rejecting claims 15 and 22 under 35 U.S.C. § 102(b) as anticipated by
Begemann.

Patent Owner contends that Begemann fails to teach a heat sink that has an
air chamber within its interior and also has the semiconductor devices mounted on
it. *See* App. Br. 13–14; Reb. Br. 4–5. According to Patent Owner, the Examiner
relies on gear column 1 (depicted in figure 1 reproduced below) as the heat sink
recited in claim 15. App. Br. 13–14.



FIG. 1

Appeal 2016-006246
Control Nos. 95/000,679 and 95/002,245
Patent 6,746,885 B2

### Begemann's Figure 1 Depicting an Embodiment of an LED Lamp

Patent Owner points out that gear column 1 includes an air chamber within its interior, but the light emitting diodes (LEDs) or semiconductor devices are mounted on substrate 3, not gear column 1. App. Br. 14. Specifically, Patent Owner contends that "the LEDs 4 are clearly not mounted to the gear column 1 (i.e., the alleged heat sink) and therefore, Begemann does not appear to describe, either expressly or inherently, an air chamber within an interior of a heat sink on which the LEDs 4 are mounted." *Id.*

Patent Owner also asserts that substrate 3 cannot alternatively be relied upon as the heat sink because "Begemann's substrate (3) does not contain an air chamber within its interior through which air may flow in order to facilitate heat dissipation, as required in claim 15." App. Br. 14. As such, according to Patent Owner, Begemann fails to teach the recited heat sink because neither Begemann's gear column nor substrate individually include both an air chamber and having the semiconductor devices mounted on it.

The Examiner, however, relies on the gear column 1 and substrate 3 together as the heat sink. *See* RAN 17 (identifying substrate 3 as a heat sink in annotated Figure 1, and also finding that "'gear column (1)' reads on the claimed *heat sink*"); Office Action, dated September 22, 2014, 151–53; OS Resp. Br. 7–8. This interpretation by the Examiner is supported by the '885 patent specification. For example, the '885 patent describes Figure 6, which includes multiple parts as shown in reproduced Figure 6 below, as an exemplary heat sink.[4] Figure 6; *see*

---

[4] We also note that Patent Owner relies on Figure 6 and the associated disclosure as supporting the limitations of claim 15. *See* App. Br. 5.

Appeal 2016-006246
Control Nos. 95/000,679 and 95/002,245
Patent 6,746,885 B2

*also* '885 patent, col. 7, ll. 15–16 (identifying Figure 6 as "a cross sectional view of
*a heat sink* of the invention 401." (emphasis added)).



Fig. 6

**Figure 6 Depicting a Cross-Section of an Exemplary Heat Sink of the '885
Patent Claimed Invention**

The '885 patent also describes that "[a]t the bottom of *the heat sink*, a fitting or
connector may be provided that is threaded 409a and has an electrode 409b for
installation into a traditional light socket." '885 patent, col. 7, ll. 37–40 (emphasis
added). In other words, according to the '885 patent, the unlabeled internal
column, which extends to the bottom where the fitting or connector is located, is
part of the heat sink in addition to the section on the opposite side of the air
chamber. As such, Figure 6 and the associated disclosure supports the Examiner's
interpretation that the recited heat sink may include more than one part.

Patent Owner also, for the first time in the Reply Brief, contends that

10

Appeal 2016-006246
Control Nos. 95/000,679 and 95/002,245
Patent 6,746,885 B2

> based on the art-recognized definition of a heat sink, one of ordinary
> skill in the art would understand that substrate 3 of Begemann does not
> constitute a heat sink as the term is used and understood in the art. One
> of ordinary skill in the LED lighting art would understand that a heat
> sink is a passive heat exchanger that transfers the heat generated by an
> electronic or a mechanical device into a coolant fluid in motion.

Reb. Br. 2. This argument was raised for the first time in the Reply Brief and is,
therefore, waived as untimely. *See Ex parte Borden*, 93 USPQ2d 1473, 1474
(BPAI 2010) (informative) ("[The reply brief [is not] an opportunity to make
arguments that could have been made in the principal brief on appeal to rebut the
Examiner's rejections, but were not.").

Further, Patent Owner fails to identify any persuasive support for the
proposed construction. As discussed above, the '885 patent supports the
Examiner's interpretation that the recited heat sink may include more than one
part. As such, we are not persuaded that the Examiner erred in considering the
gear column 1 along with substrate 3 as the heat sink of claim 15.

Therefore, for the reasons discussed above and identified by the Examiner,
we find that claim 15, as well as claim 22, not argued with particularity, are
anticipated by Begemann.

*C. The Obviousness Rejection Based on Begemann and Waitl*

Claims 9–11, 15, 16, 19–22 and 43

Based on the record before us, we are not persuaded that the Examiner erred
in rejecting claims 9–11, 15, 16, 19–22 and 43 under 35 U.S.C. § 103(a) as being
unpatentable over Begemann and Waitl.

With respect to claim 9, Patent Owner asserts that Begemann teaches
mounting the PCB (printed circuit board) to the substrate with a "heat-conductive

Appeal 2016-006246
Control Nos. 95/000,679 and 95/002,245
Patent 6,746,885 B2

adhesive", not mounting the LED to the PCB. App. Br. 16. According to the
Patent Owner then, "even if the adhesive of Begemann were replaced with the
light-reflective adhesive from Waitl, the claimed invention would not result
because the 'light reflective adhesive' would not be used to mount "at least one
semiconductor device on each of said primary heat sinks.'" *Id.*

This argument, however, mischaracterizes the Examiner's rejection. The
Examiner does not rely Begemann's adhesive between the PCB and the substrate,
but rather expressly points out that Begemann does not state how the LED is
mounted to the PCB. Specifically, the Examiner notes that

> Although Begemann does not indicate how the LED chips 11 are
> mounted the MC-PCB 12, it is clear from Begemann's desire to have
> good heat conduction all of the way from its source, the LED chip 11,
> to the metal cap 2 (Begemann, *supra*), that the attachment means
> should at least have good thermal conduction.

RAN 22. The Examiner then turns to Waitl, which teaches that it was well known
in the art at the time of the invention to use heat conductive adhesives to mounts
LEDs, to satisfy the recited adhesive limitation. RAN 22–23. As such, we find
Patent Owner's argument unpersuasive.

Likewise unavailing is Patent Owner's argument that

> it is not apparent, and the Examiner did not discharge the initial burden
> of explaining, why one having ordinary skill in the art would have been
> realistically motivated to replace Begemann's adhesive with Waitl's
> light-reflective adhesive, particularly since any light emitted by the
> semiconductor LED 11 of Begemann cannot possibly be reflected by
> Begemann's adhesive.

App. Br. 16; *see also* PO Reply Br 6–7. Notably, the Examiner does not rely on
Waitl's teaching of a *light-reflective* adhesive, but instead maintains that a skilled
artisan would have been motivated to use Waitl's *heat conductive* adhesive given
Begemann's desire to have *good heat conduction*. RAN 22–23. As the Examiner

Appeal 2016-006246
Control Nos. 95/000,679 and 95/002,245
Patent 6,746,885 B2

points out, Waitl's heat conductive adhesive is also light reflective and, thus,
satisfies the recited limitation of claim 9 as well as the similar limitations of claims
21 and 43. RAN 23.

> Patent Owner also asserts that
>
> col. 9 lines 16-17 of the '885 patent discloses that examples of light
> reflective adhesives that may be used include silver and aluminum
> based epoxy. As one of ordinary skill in the art would have understood,
> the combination of silver <u>and</u> aluminum present in the example for a
> light reflective epoxy.

Reb. Br. 6 (underlining in original). This argument, however, was raised for the
first time in the Reply Brief and is, therefore, waived as untimely. *See Borden*, 93
USPQ2d at 1474. Moreover, Patent Owner mischaracterizes the disclosure of the
'885 patent. Contrary to Patent Owner's assertions, the '885 patent refers to silver
and aluminum-based epoxy as *examples* of light reflective *adhesives*, which
addresses more than one example of a light reflective adhesive. *See* '885 patent,
col. 9, ll. 16–17.

With respect to claims 15, 20, and 21, Patent Owner again contends that
Begemann fail to teach the limitations of the heat sink. *See* App. Br. 17–19. For
example, with respect to claims 15, "Patent Owner submits that the LEDs (4) are
clearly not mounted to the gear column 1 (i.e., the alleged heat sink) and, therefore,
Begemann does not appear to describe, either expressly or inherently, an air
chamber within an interior of a heat sink on which the LEDs 4 are mounted.").
App. Br. 18; *see also* App. Br. 18–19 (presenting the same heat sink and light-
reflective adhesive arguments as discussed above for claims 20 and 21). However,
as discussed above, we find this argument unpersuasive as the Examiner relies on
the gear column and substrate collectively for the heat sink limitations. *See, e.g.*,
RAN 27–29.

13

Appeal 2016-006246
Control Nos. 95/000,679 and 95/002,245
Patent 6,746,885 B2

Therefore, for the reasons discussed above and identified by the Examiner, we find that claims 9, 15, 20, 21, and 43 as well as claims 10, 11, 16, 19, and 22 not argued with particularity (*see, e.g.*, App. Br. 20–21), are unpatentable over Begemann and Waitl.

## D. The Remaining Obviousness Rejections Based on Begemann, Waitl, and the Additionally Cited Prior Art References

Patent Owner present no separate argument for claims 10, 12, 13, 17, 18, 20, 22–27, 30–32, 35, 36, and 38–42, but instead relies on the arguments presented with respect to claims 9 and 15. *See, e.g.,* App. Br. 20–22, 26. For the reasons discussed above, we find these arguments unpersuasive. Therefore, we find that claims 10, 12, 13, 17, 18, 20, 22–27, 30–32, 35, 36, and 38–42 are unpatentable over Begemann, Waitl, and the additionally cited prior art references.

## E. The Remaining Rejections

Because our decision is dispositive regarding patentability of all appealed claims based on the foregoing prior art references, we need not reach the merits of the Examiner's decision to reject also the claims based on the additionally cited combinations of prior art. *See In re Gleave*, 560 F.3d 1331, 1338 (Fed. Cir. 2009) (not reaching other rejections after upholding an anticipation rejection); *see also Beloit Corp. v. Valmet Oy,* 742 F.2d 1421, 1423 (Fed. Cir. 1984) (approving ITC's determination based on a single dispositive issue, and not reaching other issues not decided by the lower tribunal).

Appeal 2016-006246
Control Nos. 95/000,679 and 95/002,245
Patent 6,746,885 B2

## V. CONCLUSION

We affirm the Examiner's decision to reject claims 9–13, 15–27, 30–32, 35, 36, and 38–43.


## VI. TIME PERIOD FOR RESPONSE

Requests for extensions of time in this *inter partes* reexamination proceeding are governed by 37 C.F.R. § 1.956. *See* 37 C.F.R. § 41.79.

In the event neither party files a request for rehearing within the time provided in 37 C.F.R. § 41.79,  and this decision becomes final and appealable under 37 C.F.R. § 41.81, a party seeking judicial review must timely serve notice on the Director of the United States Patent and Trademark Office.  *See* 37 C.F.R. §§ 90.1 and 1.983.


<u>AFFIRMED</u>

Appeal 2016-006246
Control Nos. 95/000,679 and 95/002,245
Patent 6,746,885 B2

FOR PATENT OWNER:

DITTHAVONG & STEINER, P.C.
Keth Ditthavong
44 Canal Center Plaza
Suite 322
Alexandria, VA 22314

FOR THIRD-PARTY REQUESTER:

SUTTON MCAUGHAN DEAVER, PLLC
3 Riverway Suite 900
Houston, TX 77056

FISH AND RICHARDSON PC
P.O. Box 1022
Minneapolis, MN 55440

# EXHIBIT 11

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| OPTOLUM, INC., <br><br>      Plaintiff, <br><br>   v. <br><br> CREE, INC., <br><br>      Defendant. | Civil Action No. 1:17-cv-00687 |

**SUPPLEMENTED DECLARATION OF DR. ERIC BRETSCHNEIDER REGARDING CLAIM CONSTRUCTION IN SUPPORT OF CREE, INC.**

## I.    INTRODUCTION

### A.    Background

1.    My name is Eric Bretschneider. I make the following statements of my own personal knowledge and experience, and, if called as a witness, I could and would testify to the following:

2.    I have been retained by Cree, Inc. ("Cree") through their counsel to provide my opinions concerning the claim construction of certain disputed terms for the asserted claims of U.S. Patent Nos. 6,831,303 ("the '303 Patent") and 7,242,028 ("the 028 Patent").

3.    I expect to be called to provide expert testimony at deposition and/or at hearing regarding the subject matters set forth in this declaration. In general, I expect to testify regarding the background of the relevant technology; the state of the art as of the filing dates of the asserted patents; my own background, qualifications, skill and experience; my opinions regarding the understanding of the disputed claim terms that

An LED is a type of solid-state lighting (or SSL), and uses a semiconductor to convert electricity into light.  The semiconductor component has a relatively small light emitting area, typically about 1 square millimeter.  An LED conventionally includes one or more LED die (or "LED chip"), which are typically packaged in a protective structure called an LED package.  The LED package includes electrical connections and possibly an optical element and thermal, mechanical, and electrical interfaces.  LED packages also commonly include an optically transparent encapsulant which surrounds the LED chip(s). The encapsulant provides some degree of mechanical protection and also increases the amount of light that can be extracted from the LED chip.

35.    LEDs conventionally include two types of semiconductor materials which form a junction or active region that emits light, and electrical contacts connected to leads or other electrical connections.  The junction is an interface between "p-type" semiconductor material, which has a deficiency of electrons, and an "n-type" semiconductor material, which has an excess of electrons.  Electrical contacts connected to the device permit an electrical current to flow through the junction, thereby causing the emission of radiation in a certain wavelength, e.g., red, orange, blue, ultraviolet (UV), etc.

36.    Red (R), green (G), and blue (B) LEDs may be arranged together so that their combined emission is perceived as white light.  Alternatively, LEDs may include a phosphor material that absorbs the radiation emitted from the device or junction and then reemits visible light of a different wavelength than what was absorbed.  For example, a GaN-based LED may emit light at blue wavelengths, and phosphor located near the light-emitting region may absorb a portion of that light and may reemit light over a broader range of wavelengths that spans green, yellow, orange and red (depending on the type of phosphor material).  The combination of unabsorbed blue light from the LED die and light emitted from the phosphor may be perceived by the human eye as white.  Such