1  Ryan D. Dykal (*Pro Hac Vice*)
   rdykal@shb.com
2  Mark D. Schafer (*Pro Hac Vice)*
   mschafer@shb.com
3  Maxwell C. McGraw (*Pro Hac Vice*)
   mmcgraw@shb.com
4  SHOOK, HARDY & BACON L.L.P.
   2555 Grand Boulevard
5  Kansas City, Missouri 64108
   Telephone: 816-474-6550
6  Facsimile: 816-421-5547

7  Naoki S. Kaneko (SBN: 252285)
   nkaneko@shb.com@shb.com
8  Mayela C. Montenegro-Urch (SBN: 304471)
   mmontenegro@shb.com
9  SHOOK, HARDY & BACON L.L.P.
   Jamboree Center
10 5 Park Plaza, Suite 1600
   Irvine, California 92614
11 Telephone: 949-475-1500
   Facsimile: 949-475-0016

12 Attorneys for Defendant Feit Electric Company, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAO LIGHTING, INC. | Case No. 2:20-cv-04926-AB-PJW |
| Plaintiff, | Judge Hon. André Birotte, Jr. |
| v. | **REPLY BRIEF IN SUPPORT OF FEIT ELECTRIC CONPANY INC.'S MOTION FOR SUMMARY JUDGMENT** |
| FEIT ELECTRIC COMPANY, INC., | |
| Defendant. | [Filed concurrently with McGraw Declaration In Support of Reply; and Response to CAO Lighting's Additional Statements of Disputed Facts] |
| | Date: November 18, 2022<br>Time: 10:00 a.m.<br>Ctrm: 7B |
| | Final Pretrial Conference: March 3, 2023<br>Trial Date: March 21, 2023 |

# TABLE OF CONTENTS

I.   SUMMARY JUDGMENT OF NONINFRINGEMENT ......................... iii
    A.   Summary Judgment of Non-Infringement Should Be Granted. ........... 1
    B.   CAO Lighting Cannot Satisfy its Burden to Show Representativenes. 5

II.  CAO LIGHTING FAILED TO COMPLY WITH § 287 ......................... 9
    A.   CAO Lighting Failed to Provide Actual Notice. ................................. 9
    B.   CAO Lighting Cannot Meet Its Burden On Constructive Notice ....... 12

III. SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT IS WARRANTED .................................................................................................... 14

IV.  CONCLUSION .......................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allvoice Devs. US, LLC v. Microsoft Corp.*,
   612 F. App'x 1009 (Fed. Cir. 2015) ................................................................. 3

*Am. Med. Sys., Inc. v. Med. Eng. Corp.*,
   6 F.3d 1523 (Fed. Cir. 1993) ........................................................................... 12

*Arctic Cat Inc. v. Bombardier Rec. Prods.*,
   876 F.3d 1350 (Fed. Cir. 2017) ....................................................................... 12

*Bayer Healthcare LLC v. Baxalta Inc.*,
   989 F.3d 964 (Fed. Cir. 2021) ......................................................................... 15

*Celgene Corp. v. Hetero Labs Ltd.*,
   2020 WL 3249117 (D.N.J. June 16, 2020) ....................................................... 4

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
   No. 4:17-CV-05928-YGR, 2022 WL 2784467 (N.D. Cal. June 15,
   2022) ................................................................................................................ 9

*David Netzer Consulting Eng'r LLC v. Shell Oil Co.*,
   824 F.3d 989 (Fed. Cir. 2016) ........................................................................... 4

*Fresenius USA. Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
   721 F.3d 1330 (Fed. Cir. 2013) ....................................................................... 10

*Funai Elec. Co. v. Daewoo Elecs. Corp.*,
   616 F.3d 1357 (Fed. Cir. 2010) ....................................................................... 11

*HTC Corp. v. Cellular Commc'ns Equip.*,
   LLC, 701 F. App'x 978 (Fed. Cir. 2017) ......................................................... 3

*Imprenta Servs., Inc. v. Karll*,
   No. CV 20-6177 GW, 2022 WL 2783841 (C.D. Cal. Jan. 7, 2022) .................. 3

*Intex Tec. Corp. v. Team Worldwide Corp.*,
   59 F. Supp. 3d 28, 43 (D.D.C. 2014) ................................................................. 5

*Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*,
   22 F.4th 1369 (Fed. Cir. 2022) .......................................................................... 3

*Lans v. Digital Equip. Corp.*,
  252 F.3d 1320 (Fed. Cir. 2001) .................................................................... 10

*Parallel Networks, LLC v. Abercrombie & Fitch Co.*,
  704 F.3d 958 (Fed. Cir. 2013) ....................................................................... 5

*Philips N. Am. LLC v. Garmin Int'l, Inc.*,
  No. 2:19-CV-06301-AB-KS, 2020 WL 13558945 (C.D. Cal. Aug. 28, 2020) (Birotte, J.) ............................................................................................. 4

*Rosebud LMS Inc. v. Adobe Sys. Inc.*,
  812 F.3d 1070 (Fed. Cir. 2016) .................................................................... 10

*Simpson Strong-Tie Co. v. Oz-Post Int'l, LLC*,
  411 F. Supp. 3d 975, 984 (N.D. Cal. 2019) .................................................. 5

*Skedco, Inc. v. Strategic Operations, Inc.*,
  685 F. App'x 956 (Fed. Cir. 2017) ............................................................... 10

*Smart Wearable Technologies Inc. v. Fitbit Inc.*,
  2018 WL 659013 (N.D. Cal. 2018) ............................................................... 3

*Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*,
  15 F.4th 1121 (Fed. Cir. 2021) ...................................................................... 5

*Unique Concepts Inc. v. Brown*,
  939 F.2d 1558 (Fed. Cir. 2006) ..................................................................... 5

*Zadro Prods., In. v. Feit Elec. Co., Inc.*,
  514 F. Supp. 1209 (C.D. Cal. 2021) ............................................................ 13

**Statutes**

35 U.S.C. § 154 ........................................................................................................ 10

35 U.S.C. § 287(a) ......................................................................................... 9, 10, 12

iv
REPLY BRIEF ISO MOTION FOR SUMMARY JUDGMENT
Case No: 2:20-CV-04926-AB-PJW

1   I.    **SUMMARY JUDGMENT OF NONINFRINGEMENT**

2        **A. Summary Judgment of Non-Infringement Should Be Granted.**

Appreciating that a boundary between two layers cannot be a "distinct layer[] of material that reflect[s] light," CAO Lighting offers a new infringement theory for "first reflective layer" in a last-ditch effort to survive summary judgment. But CAO Lighting's contentions, discovery responses, and expert opinions demonstrate that it consistently accused the substrate-buffer *interface* as the "first reflective layer" below the active layer of the accused LED chips. It is too late for CAO Lighting to change its theory and offer a new one that it never previously disclosed -- Feit Electric would be prejudiced if CAO Lighting were permitted to do so now. But even if CAO Lighting could—as a procedural matter—switch its infringement theory at this late stage, its new infringement theory would be precluded as a matter of law. Indeed, claim 8 depends from claim 7 and states that it *further comprises* "reflective layers"—not that the substrate disclosed in claim 7 *is* or *includes* the "reflective layers." CAO Lighting cannot identify the patterned sapphire substrate in the Accused Products as satisfying both the "substrate" layer limitation disclosed in claim 7 *and* the "first reflective layer" limitation disclosed in claim 8. As such, the Court should enter summary judgment of non-infringement under either theory.

CAO Lighting cannot reasonably argue that it identified the patterned sapphire substrate of the accused LED chips as the "first reflective layer" below the active layer in either its Final Infringement Contentions or its response to Feit Electric's infringement contention interrogatory. In both disclosures, CAO provided a graphic to identify the layer structure in each accused LED chip. SOF ¶ 14; *see also* Ex. 50 at 44. This illustrations shows that CAO Lighting identified alleged "reflective layers" both above and below the active layer of the chip. For the upper "reflective layer," CAO Lighting identified what it purports to be a distinct layer of material comprised of

"ITO, SiO$_2$ or other dielectric." For the lower "reflective layer,"[1] however, CAO Lighting did not identify the patterned sapphire substrate (or any portion thereof) as it now contends it did. Rather, it identified an *interface* or *boundary* between the patterned sapphire "substrate" and the GaN "buffer layer." *See id.* Indeed, despite identifying a specific material or composition for every other alleged chip layer, CAO did not do so for the lower "reflective layer." Nor did it identify the lower "reflective layer" as any portion of the patterned sapphire substrate. *See id.* The SEM images depicted in CAO Lighting's Final Infringement Contentions further confirm CAO's theory that the lower "reflective layer" is the interface between the patterned sapphire substrate and buffer layer—not the patterned sapphire substrate itself. *See, e.g.*, (Dkt. 143-9 at Ex. 1, pp. 25-28 (depicting the identified "patterned sapphire substrate" and "buffer layer"), pp. 37-38 (depicting the "first reflective layer" as the interface between the patterned sapphire substrate and buffer layer)).[2]

In view of CAO Lighting's unambiguous and consistent theory that the substrate-buffer interface is the "first reflective layer"—a theory that CAO Lighting first disclosed in January 2021 and maintained throughout discovery—it would be untimely and prejudicial to Feit Electric to permit CAO Lighting to change that theory now.[3] Indeed, the very "purpose of contention interrogatories is not to obtain facts, but

---

[1] The parties have referred to the lower "reflective layer" synonymously with "first reflective layer" recited in claim 8.

[2] Nowhere in the portions of the expert report or deposition testimony of Dr. Shealy cited by CAO Lighting does he identify the patterned portion of the sapphire substrate as the "first reflective layer." Instead, both his report and testimony confirm the GaN-substrate interface is what he identified as the "first reflective layer," and it is the only point where he calculated reflectivity. SOF ¶¶ 15-19.

[3] CAO Lighting points to its disclosures <u>in other cases</u> to support that its Final Infringement Contentions here identify the patterned sapphire substrate as a "first reflective layer." But those disclosures, in other cases, even if applicable in this case, support the opposite conclusion. For example, in *CAO Lighting, Inc. v. Signify N.V. et al., C.A. No. 2:21-cv-08972-AB-SP*, CAO Lighting provided claim charts in its First Amended Complaint disclosing a theory that "the substrate, in particular its upper surface, reflects light coming from the active layer. . . The patterned portion of the substrate is a reflective layer." SOF ¶ 88; Ex. F (First Amended Complaint) at Ex. D, pp. 23–25. CAO Lighting never provided a similar disclosure in its Final Infringement Contentions or its contention interrogatory response in this case. Instead, CAO Lighting only pointed to the substrate-buffer interface.

rather to narrow the issues that will be addressed at trial and to enable the propounding party to determine the proof required to rebut the respondent's position." *Imprenta Servs., Inc. v. Karll*, No. CV 20-6177 GW (PVCX), 2022 WL 2783841, at *3 (C.D. Cal. Jan. 7, 2022). Allowing CAO Lighting to fundamentally alter its infringement theory for this critical limitation after the close of discovery would deprive Feit Electric the ability to marshal the proof required to rebut it. The Court should not permit such a belated and prejudicial deviation in contentions.[4]

But even if CAO Lighting were permitted—as a procedural matter—to alter its infringement theory at this late stage, its newly-minted theory that the "first reflective layer" is the patterned sapphire substrate is precluded as a matter of law. Claim 7 requires a number of specific layers in a LED chip, including "a substrate on which epitaxial layers are grown." (Dkt. 143-4 at 10:28−43). Claim 8 then covers "[a] device as recited in claim 7 *further comprising* a first and a second reflective layers . . . located on opposite sides of said active layer." *Id.* at 10:44−48 (emphasis added). Each claimed layer or structure—including "a substrate" and "a first and a second reflective layers"—is a separate limitation. *See id.* at 10:28−48; Dkt. No. 96 at 21 (construing "reflective layers" as "distinct layers of material"). The substrate required by claim 7 therefore cannot also be the first "reflective layer" required by claim 8. *See HTC Corp. v. Cellular Commc'ns Equip.*, LLC, 701 F. App'x 978, 982 (Fed. Cir. 2017) ("The separate naming of two structures in the claim strongly implies that the named entities are not one and the same structure."); *Kyocera Senco Indus. Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1382 (Fed. Cir. 2022) ("The asserted claims list

---

[4] *See Allvoice Devs. US, LLC v. Microsoft Corp.*, 612 F. App'x 1009, 1013 (Fed. Cir. 2015) (affirming district court's decision to exclude an infringement theory on summary judgment where the patentee urged that a specific component met a claim limitation, but its infringement contentions did not explicitly identify that specific component as meeting the claim limitation); *Smart Wearable Technologies Inc. v. Fitbit Inc.*, 2018 WL 659013, *1-*2 (N.D. Cal. 2018) (granting summary judgment of non-infringement and precluding patentee from asserting new infringement theories not previously disclosed in its contentions for lack of diligence).

those elements separately. . . . There is, therefore, presumption that those components are distinct.").

This conclusion is also required by claim 8's use of the transitional phrase "further comprising." Where a claim element is introduced by the phrase "further comprising," it presumptively cannot be satisfied by some earlier claim element—double-counting elements is not allowed.[5] *See, e.g., David Netzer Consulting Eng'r LLC v. Shell Oil Co.*, 824 F.3d 989, 996 (Fed. Cir. 2016) ("[D]ependent claim 19 is directed to a process 'further comprising' a hydrotreating step thus showing that hydrotreating is not part of the [preceding] fractioning step." (citation omitted)); *Philips N. Am. LLC v. Garmin Int'l, Inc.*, No. 2:19-CV-06301-AB-KS, 2020 WL 13558945, at *13 (C.D. Cal. Aug. 28, 2020) (Birotte, J.) ("Claim 25 recites a location determination module of Claim 24 '**further compris[ing]** a GPS receiver.' The claim language thus supports that "GPS receiver" is an *additional* component relative to the "location determination module" recited by Claim 24.") (emphasis in original); *Celgene Corp. v. Hetero Labs Ltd.*, 2020 WL 3249117, at *12 (D.N.J. June 16, 2020) ("the phrase 'further comprising' indicates that the elements following the phrase 'further comprising' are not part of the limitations preceding that phrase.").[6]

Regardless of whether the "first reflective layer" is the entire substrate or only the "pattered region," CAO Lighting's new theory impermissibly relies on at least a portion of the sapphire substrate, which CAO Lighting already uses to satisfy the substrate requirement of claim 7, to satisfy the separate, "further" reflective layer limitation of claim 8. As noted above, CAO Lighting defined in its Final Infringement Contentions the "substrate on which epitaxial layers are grown" required by claim 7 as being a patterned sapphire substrate. *See, e.g.*, (Dkt. 143-9 at Ex. 1, pp. 25-28). Thus,

---

[5] CAO Lighting never sought a construction contrary to this presumption, and it is too late to seek one now.

[6] In fact, CAO's expert, Dr. Shealy, even admits that the phrase "further comprising" means that the "reflective layers have to be in addition to the other layers of claim 7." Ex. 51, 05/20/2022 Shealy Dep. Tr. at 386:24-387:5.

4

CAO Lighting's new infringement theory relies on the very same structure to support its infringement opinions as to both claim 7's growth "substrate" limitation and claim 8's "first reflective layer" limitation. That approach is precluded as a matter of law.[7]

Under either of CAO Lighting's infringement theories for "first reflective layer," the Court should enter summary judgment of non-infringement. Under the interface theory, CAO Lighting has not identified "a distinct layer of material" that reflects light. Under the "patterned sapphire substrate" theory, CAO Lighting has impermissibly double-counted the patterned sapphire substrate as satisfying two distinct claim limitations. Either way, CAO's argument fails.[8]

### B. CAO Lighting Cannot Satisfy its Burden to Show Representativenes.

CAO Lighting's opposition brief confirms that its representativeness claims are based on its experts' conclusory opinions and nondescript string cites to irrelevant documents. But it is well settled that an expert's "ipse dixit statements . . . are not sufficient to avoid summary judgment" of non-infringement. *Parallel Networks, LLC v. Abercrombie & Fitch Co.*, 704 F.3d 958, 970 (Fed. Cir. 2013). And generic string cites to swaths of documents that do not "explain how [they] support [the patentee's] infringement theory," impermissibly "amount to 'conclusory statements[] . . . without any analysis to support' them." *Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*, 15 F.4th 1121, 1130 (Fed. Cir. 2021). When CAO Lighting's experts' conclusory

---

[7] Feit Electric is not moving for summary judgment of non-infringement on the basis that the identified "first reflective layer" reflects insufficient light to meet this claim limitation, so CAO's argument that Feit Electric is attempting to revisit claim construction on this point is incorrect and irrelevant. *See* Dkt. No. 154 at 4-5.

[8] *See, e.g., Unique Concepts Inc. v. Brown*, 939 F.2d 1558, 1561-62 (Fed. Cir. 2006) (where claim language "ma[d]e unambiguous reference to two distinct elements," affirming finding of no infringement where patentee argued two limitations were satisfied by same accused infringing structure); *see also Simpson Strong-Tie Co. v. Oz-Post Int'l, LLC*, 411 F. Supp. 3d 975, 984 (N.D. Cal. 2019) (where claims required "a cap" and "a screw," holding the "head of the screw cannot serve as both the cap and the screw"); *Intex Tec. Corp. v. Team Worldwide Corp.*, 59 F. Supp. 3d 28, 43 (D.D.C. 2014) (granting summary judgment of non-infringement "[b]ecause there is no genuine question that the pump housing in the accused devices would be viewed as part of the pump itself, the housing cannot satisfy the separate claim limitation of a socket.").

representativeness opinions were challenged, its experts could not identify evidence supporting those opinions with any specificity. And when faced with evidence casting doubt on those opinions, CAO Lighting's experts quickly admitted that physical inspection and testing—which they did not perform on the uncharted products—were required to confirm representativeness of the patented features. CAO Lighting's representativeness claims do not meet the standard required to survive summary judgment. The Court should grant Feit Electric's motion.

CAO Lighting first argues that Mr. Benya's representativeness opinions are sufficient because they rely on (1) lighting standards, (2) Feit's website, (3) historic product catalogs, (4) LM79 testing reports, and (5) a standard list of LED chip manufacturers. Dkt. No. 154 at 6-8. But none of this evidence actually supports that the charted products are representative of the uncharted products. As to the lighting standards and product catalogs, CAO Lighting cannot deny that they only describe non-patented features. Indeed, Mr. Benya admits this in his report when noting that "the overall lamp profile of each wattage and type of LED lamps—including size, shape, base, wattage replacement, light intensity, and light color—is standardized throughout the industry." (Dkt. 152-12 at ¶¶ 144-145); SOF ¶ 33.[9] CAO Lighting already argued, and the Court already observed, that such features "have no bearing on Plaintiff's infringement theories." Dkt. No. 91 at 7. If the features described by these documents have no bearing on CAO Lighting's infringement theories, how could they be used as evidence to support them?

As to Feit Electric's website, Mr. Benya provided no specifics in his report about which portions of Feit Electric's website he reviewed or relied upon to support his representativeness opinions or how they support them, and admitted during

---

[9] CAO Lighting states that the historical product catalogs relied upon by Mr. Benya support representativeness of accused internal components like heat sinks. RSOF ¶ 37. Notably, CAO Lighting provides no citations supporting this statement, and it is entirely unclear from simple inspection how the catalogs could possibly support this representation. And a review of the Feit Electric website reveals that details of construction, especially internal construction, are <u>not</u> shown.

deposition that he could not recall with specificity which portions of Feit Electric's website he reviewed. SOF ¶ 35.

With respect to the LM79 reports, Mr. Benya states that he relied on them to support opinions "relating to the light generated by the LEDs used in Defendant's accused [products]." (Dkt. 152-12 at ¶ 213). But Mr. Benya defers to Dr. Shealy on infringement opinions for the light output limitations, and Dr. Shealy admitted LM79 reports "[are] not an appropriate measure" because these reports show "testing performed on whole lights"—not the LED chips as required by the claims. SOF ¶ 31; RSOF ¶ 40.

Finally, for the LED package and MA-Tek reports relating the chip layers, Mr. Benya merely string cites documents, failing to correlate any report or LED package to any specific product model and failing to provide any rationale as to why these documents illustrate representativeness. (Dkt. 152-12 at ¶¶ 214-215). Mr. Benya further admitted that he does not even know which LED packages were included in any particular Accused Product. SOF ¶ 41. In any event, Mr. Benya admits he rendered no infringement opinions, much less representativeness opinions, related to the LED chip layers or LED light output limitations in claims 7-8 and 21, to which these documents relate. (Dkt. 143-14 at ¶ 198); (Dkt. 143-9 at Ex. 1, pp. 19-21).

Dr. Shealy's representativeness opinions are just as deficient as Mr. Benya's. Dr. Shealy's opinions are rooted in his inspection and output testing of the charted Accused Products and unidentified third-party products. SOF ¶ 25. Without actually identifying any of these third-party products, CAO Lighting argues his opinions sufficiently establish representativeness as to the LED chip structures and emissions across all Accused Products, because they are commoditized and virtually the same. (Dkt. No. 154 at 9). But Dr. Shealy's own inspections and testing disprove this representation. First, Dr. Shealy admits that certain LED packages in Feit Electric products he tested in Exhibit 8 of CAO Lighting's Final Infringement Contentions

7

failed to meet the 40mW threshold required for infringement and, as such, he was "not confident that my testing shows infringement across the entire category." (Dkt. 154-2 at ¶ 152). Yet the *identical* models of LED packages identified in the Exhibit 8 products that Dr. Shealy admits do not infringe based on his testing are each identified as LED packages included in accused A-Line products. *Compare* (Dkt. 143-9, Ex. 8 at 17 *with* Ex. 1 at 19). Dr. Shealy fails to even address why the LED packages in one category of products are *configured* to output greater than 40mW of light, while those *identical* LED packages in another category are not. Second, Dr. Shealy admitted that a lot of the products he tested include a "chip-on-board" design where he has no opinion on infringement. SOF ¶ 29. While he could not recall whether any of the 40 Feit Electric products he tested out of the approximately 1,800 Accused Products included this "chip-on-board" configuration, the fact that "a lot" of the third-party products he uses to support his representativeness opinions include this configuration undermines his representation that "the chips have been commoditized" and are "all virtually the same." (Dkt. 154-3 at 68:4-16); (Dkt. 154 at 9).

Finally, CAO Lighting's criticisms of Dr. Bretschneider's opinions on lack of representativeness are baseless. (Dkt. No. 154 at 11). CAO Lighting cannot rationally argue the features in the Accused Products identified by Dr. Bretschneider do not bear on infringement. Rather, these features unquestionably relate to the asserted claims: color enclosures (different than white enclosures charted by CAO for "substantially transparent to white light" limitation); metal external finned heat sinks (different than the internal PCBs charted as the "heat sink" limitation); enclosures *made* from polymer-phosphor (different than phosphor *coated* chips charted to satisfy the "coating for converting monochromatic light . . . to white light" limitation); ventilation holes for dissipating heat (different than the PCBs used to dissipate heat charted as the "heat sink" limitation); and battery backup power source (different power source than the AC/DC converter charted in some of the Accused Products).

8

1  And when confronted with these differences, Mr. Benya admitted that he "really [doesn't] know what's in there, unless we take [the product] apart." SOF ¶ 45.

To prevail on summary judgment, Feit Electric need only "produce evidence demonstrating the [uncharted products are] not representative of the [charted products] *or* show that [CAO Lighting] does not have enough evidence to prove this element at trial." *Cellspin Soft, Inc. v. Fitbit, Inc.*, No. 4:17-CV-05928-YGR, 2022 WL 2784467, at *15 (N.D. Cal. June 15, 2022). Feit Electric prevails on both grounds. The Court should grant Feit Electric's motion for summary judgment.

## II. CAO LIGHTING FAILED TO COMPLY WITH § 287

### A. CAO Lighting Failed to Provide Actual Notice.

In its opposition, CAO Lighting maintains that its complaint in the 2011 Utah Action, asserting cancelled claims of the original '961 patent, satisfies the actual notice requirements of § 287. (Dkt. 154 at 12–16). CAO Lighting's argument, however, is contrary to the statutory language of § 287, which requires actual notice of *infringement*. 35 U.S.C. § 287(a). Feit Electric cannot be liable for infringing cancelled claims as a matter of law. Since the Utah Action only asserted now-cancelled claims, it cannot provide the basis for satisfying the actual notice requirement for the new and entirely distinct claims asserted in this case. Since CAO Lighting has no evidence that Feit Electric was notified of any alleged infringement of the claims asserted in this case until this case was filed, the Court should find that CAO Lighting has failed to satisfy the actual notice requirements of § 287.

The Utah court's denial of CAO Lighting's attempt to reopen the 2011 Utah Action is illustrative of its failure to provide actual notice of infringement. There, after the asserted claims of the '961 patent were cancelled and brand new claims were issued after reexamination, CAO Lighting sought to reopen the case. *See* (Dkt. 152-1, Ex. K at 2). The court denied CAO Lighting's motion because there was "nothing before the Court to suggest that the Complaint filed in 2011 continue[d] to present any

9

viable claim" and CAO Lighting's request was to "assert 'new claims[,]'" which would present a "new plaintiff" filing "new claims" in a "new lawsuit." *Id.* CAO Lighting asks this Court to ignore the scope and identity of the actual claims asserted, and find that simply identifying a patent number is enough to satisfy § 287's actual notice requirement. This argument was insufficient to reopen the 2011 Utah Action in 2018, and it remains deficient to demonstrate actual notice in this case as well.

Federal Circuit precedent runs contrary to CAO Lighting's position as well. Importantly, the claims of an asserted patent are what defines the scope of a patentee's rights. *Skedco, Inc. v. Strategic Operations, Inc.*, 685 F. App'x 956, 960 (Fed. Cir. 2017). Thus, actual notice under § 287(a) requires an identification of the claims of "specific patent" that the patentee intends to assert against specific products so that the accused infringer knows what claims it allegedly infringes—otherwise, an accused infringer could not know how to "avoid further infringement." *Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327 (Fed. Cir. 2001). CAO Lighting cannot satisfy the actual notice requirement when the '961 patent had all of the originally asserted claims cancelled, and CAO Lighting did not provide any notice of its new allegations for the new claims until it filed suit in this case. *See Rosebud LMS Inc. v. Adobe Sys. Inc.*, 812 F.3d 1070, 1076 (Fed. Cir. 2016) (explaining that notice of a parent patent was not sufficient for actual notice because the "notice of the claims" was also required);[10] *Fresenius USA. Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir. 2013) ("[W]hen a claim is cancelled, the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot.").

---

[10] CAO Lighting's argument dismissing *Rosebud* because it considered a different statute ignores the parallel reasoning from that case. In *Rosebud*, it is true that the Federal Circuit analyzed the actual notice requirement under 35 U.S.C. § 154. *Rosebud*, 812 F.3d at 1076. But importantly, the actual notice requirement under § 154 is a *lesser* burden than § 287. *Id.* at 1074–75 (finding that § 287 "explicitly requires an act of notification, unlike § 154(d), which merely requires 'actual notice'").

10

Critically, CAO Lighting also provides no evidence that it accused *specific products or devices* of infringement prior to filing this suit. "[T]o serve as actual notice," the patentee must provide notice of a "charge of infringement of specific patents by a specific product or group of products." *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010). In *Chrimar Systems Inc. v. Ruckus Wireless, Inc.*, the Court granted summary judgment of no pre-suit damages where the allegations of actual notice stemmed from a pre-suit letter alleging infringement by 98 products of "one or more" of 68 claims of the asserted patent. 2020 WL 4431787, *7 (N.D. Cal. 2020). The Court reasoned this letter "fail[ed] to provide enough detail to support an objective understanding of the specific charge of infringement" since "defendants would have to determine which of the 68 patent claims were infringed by the 98 listed products," and thus "improperly shift[ed] the notice burden to the accused infringer." *Id.* Here, CAO Lighting's evidence for actual notice is far weaker. CAO identifies *no evidence* that it provided Feit Electric pre-suit infringement notice for *a single claim* of the 80 newly added claims during reexamination. CAO Lighting also identifies *no evidence* that it ever notified Feit Electric of alleged infringement as to *a single Accused Product*—of the more than 1,800 it accuses in this case. Indeed, the Utah Action was stayed shortly after pleadings closed and then dismissed shortly after the stay was lifted. At most, CAO Lighting provided, through the Utah Action, a barebones charge of infringement of unidentified "LED light source products" by claims that have since been cancelled. (Dkt. 144-7 at ¶ 31). This is insufficient as a matter of law to place Feit Electric on notice of the new claims asserted in this case against more than 1,800 products. *Chrimar Systems Inc.*, 2020 WL 4431787, *7 ("Actual notice can occur in an infringement suit relating to 98 accused products with a patent that has 68 claims, but to do so requires more than barebones allegations.").

CAO Lighting also mischaracterizes this Court's order denying Feit Electric's motion to dismiss as "rul[ing] that the Utah Action consisted actual notice of

11

infringement of the '961 patent." (Dkt. 154 at 13). As explained in Feit Electric's opening brief, the Court's order only found that CAO Lighting's First Amended Complaint satisfied the pleading standards for actual notice. (Dkt. 35 at 6–7). The only other fact beyond the 2011 Utah Action's complaint that CAO Lighting points to that purports to provide notice of its allegations is its email to Feit Electric in March 2018 seeking to reopen the 2011 Utah Action. (Dkt. 154 at 16 (citing Ex. 13)). The March 2018 correspondence does not contain any affirmative communication of infringement for the newly issued claims or any claim charts demonstrating how the newly issued claims map to any of Feit Electric accused products. (*See id.*). Thus, the extent of CAO Lighting's evidence to demonstrate actual notice is its infringement allegations in the 2011 Utah Complaint. As discussed above, this evidence is insufficient as a matter of law.[11]

At best, CAO Lighting provided Feit Electric with notice of alleged infringement for patent claims that no longer exist on products never identified. Because knowledge of a patent number alone is insufficient to demonstrate actual notice, CAO Lighting did not give actual notice of its specific charges of infringement as required by § 287(a).

**B. CAO Lighting Cannot Meet Its Burden On Constructive Notice.**

CAO Lighting bears the burdens of production and persuasion on compliance with the marking statute, which "must be substantially consistent and continuous." *Am. Med. Sys., Inc. v. Med. Eng. Corp.*, 6 F.3d 1523, 1537 (Fed. Cir. 1993); *see also Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350, 1367 (Fed. Cir. 2017). CAO Lighting's opposition argues that its failure to comply with its marking requirements amounts to "inadvertent omissions" and that its conclusory statements

---

[11] CAO Lighting's reliance on *CFL Technologies* to argue for a categorical rule that notice in one lawsuit with respect to a particular patent is always enough for actual notice under § 287(a) should be rejected. Importantly, in *CFL Technologies*, the patent's claims had not changed, so the plaintiff—unlike CAO Lighting—was not suing on an entirely different set of claims that did not exist when the first lawsuit was filed. No. 18-1444-RGA, 2021 WL 1105335, at *1 (D. Del. Mar. 23, 2021).

concerning marking policies and practices create disputed issues of fact. (Dkt. 154 at 16). But the record demonstrates that there is no genuine dispute of fact that CAO Lighting failed to mark in a "substantially consistent and continuous" manner as required by the Federal Circuit.

First, CAO Lighting argues that marking its product packaging, rather than its products, was sufficient to satisfy § 287. (Dkt. 154 at 16–19). In view of the undisputed facts, this is incorrect. CAO Lighting admits that packaging can be marked under § 287 only "in appropriate cases." (Dkt. 154 at 17). This is permissible where "the character of the article" prevents marking the surface of the product. *Zadro Prods., In. v. Feit Elec. Co., Inc.*, 514 F. Supp. 1209, 1214–15 (C.D. Cal. 2021). CAO Lighting argues that "Feit Electric makes no effort to show it would have been practical" to mark the covered patents with the patent numbers. (Dkt. 154 at 18). This ignores the evidence presented to CAO Lighting's CEO, employees, and third party distributor of real Dynasty products that contained a host of characters on the surface of the patents as well as tags with several lines of cautions and warnings. (Dkt. 143-1 at ¶¶ 68-72). Importantly, CAO Lighting's CEO, Dr. Cao, confirmed in his deposition that all of the writing on the surface of the Dynasty products were actually intended to be viewed by the "users," or "[t]he people going to use to – who install the light." (*Id.* at ¶ 71). CAO Lighting admits that marking the surface of the actual products would be sufficient to provide explicit warnings to its customers, but simultaneously argues that the character of the products prevented it from effectively marking them with the asserted patent. The argument is inconsistent with CAO Lighting's real-world business practices and a plain attempt to excuse its lack of compliance with § 287.

CAO Lighting also attempts to manufacture a factual dispute by relying on its self-serving assurances that it complied with § 287. (Dkt. 154 at 20–23). But the *actual* evidence of marking is wholly lacking. From 2008 and 2020, CAO Lighting sold over 525,000 units of Dynasty products with over 200 distinct product numbers.

13

(Dkt. 143-3, Ex. 34). Yet, even with that many sales and relationships with distributors, CAO Lighting could not produce any real evidence that it ever sold any Dynasty products marked with the asserted patents. Two CAO Lighting employees, the VP of Technology and Quality and the Director of Operations, both testified that they were unaware of any Dynasty products ever being marked with the asserted patent. (Dkt. 143-1 at ¶¶ 77–78). And they were both similarly unaware of ever seeing, using, or adopting the product marketing checklist that CAO Lighting claims "demonstrate[s] a consistent pattern of marking." (Dkt. 154 at 21); (Dkt. 143-1 at ¶¶ 80–81). Further, a corporate representative of one of CAO Lighting's distributors testified that CAO Lighting never asked it to mark any product packaging as being covered by a patent, nor was he aware of CAO Lighting ever including any patent identification on any product packaging. (Dkt. 143-1 at ¶ 82). Tellingly, CAO Lighting fails to rebut any of this actual evidence or provide any evidence of its own that products it sold in commerce were marked. Indeed, its only attempt is to argue that it could not produce any product packaging actually offered for sale is because the products were in customer's hands and thus outside of CAO Lighting's possession, custody, and control. (Dkt. 154 at 20 n.19). This ignores the unrebutted evidence that that Delaware defendants purchased Dynasty products directly from CAO Lighting distributors during those co-pending cases, and none of those products contained any patent marking whatsoever. (*Id.* at ¶¶ 72–75). In light of the uncontroverted real evidence, which is undisputed, CAO Lighting cannot demonstrate that it consistently and continuously complied with § 287's marking requirements for substantially all of its covered products.

## III.  SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT IS WARRANTED

CAO Lighting does not dispute that its willful infringement case hinges entirely on the original, cancelled version of the asserted patent in the 2011 Utah Action. (Dkt.

154 at 23–25). But the case law is clear, willful infringement requires more than a defendant's awareness of the asserted patent. It requires evidence of deliberate or intentional infringement." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987–88 (Fed. Cir. 2021) (citing *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020)).

CAO Lighting claims that Feit Electric willfully infringed because CAO Lighting never withdrew its claims from the Utah Action. (Dkt. 154 at 24). This is irrelevant because both the legal claims and the patent claims presented in the Utah Action ceased to exist when the USPTO invalidated all of the asserted patent claims in the reexamination proceedings. CAO Lighting improperly seeks to impute a duty on Feit Electric to decipher what CAO Lighting's infringement allegations might have been for the brand new claims, even though those claims by definition have a different scope and Feit Electric was never even alerted to their existence after reexamination, despite the Utah court's clear directive. CAO Lighting has not and cannot cite any case law supporting a willfulness claim under these circumstances. Accordingly, the undisputed facts are insufficient as a matter of law to establish willful infringement.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Feit Electric's motion.

Dated: November 4, 2022

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: */s/ Maxwell C. McGraw*
    Ryan D. Dykal
    Mark D. Schafer
    Maxwell C. McGraw
    Naoki S. Kaneko
    Mayela C. Montenegro-Urch

**Attorneys for Defendant Feit Electric Company, Inc.**